1  **REESE RICHMAN LLP**
2  Michael R. Reese (State Bar No. 206773)
   875 Avenue of the Americas, 18th Floor
3  New York, New York 10001
   Telephone:  (212) 643-0500
4  Facsimile:  (212) 253-4272
5  Email:      mreese@reeserichman.com

6  **THE KREISLER LAW FIRM LLC**
7  Brian T. Kreisler
   P.O. Box 1353
8  O'Fallon, Illinois 62269
9  Telephone:  (618) 589-2165
   Facsimile:  (618) 632-5095
10 Email:      Brian@kreislerlawfirm.com

11
12 *Counsel for Plaintiffs and the Proposed Class*

13              **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15                 **WESTERN DIVISION**
16

17  ADAM PARKER and ANDREW            Case No. _____
    HARBUT, on behalf of themselves and all
18  others similarly situated,        **CLASS ACTION COMPLAINT**
19
                                      **DEMAND FOR JURY TRIAL**
20                      Plaintiffs,
21
22            v.
23  MONAVIE, INC.; MONAVIE LLC; and
    JUICEY ACAI, LLC,
24
25
26                      Defendants.

27

28

1    Plaintiffs Adam Parker and Andrew Harbut ("Plaintiffs"), on behalf of

2   themselves and all others similarly situated (the "Class," further defined herein),

3   allege the following against defendants MonaVie, Inc. and MonaVie LLC (together,

4   "MonaVie"), along with Juicey Acai, LLC ("Juicey Acai") (collectively with

5   MonaVie, "Defendants"), upon personal knowledge as to themselves and their own

6   acts, and as to all other matters upon information and belief, based upon, *inter alia*,

7   the investigation made by their attorneys, as follows:

8                                    **INTRODUCTION**

9    1.    Defendants and other beverage distributors market and sell MonaVie açaí

10   juice products (the "Products," further defined herein) through a multi-level marketing

11   scheme that disseminates false and misleading representations that the Products

12   provide certain health benefits, as determined by "millions of dollars in clinical

13   research."   Unfortunately for consumers, Defendants knowingly fabricate such

14   statements with no legitimate basis and overcharge consumers for fruit juice that

15   provides no more health benefits than other, significantly less expensive fruit juices.

16   2.    The Products addressed herein include MonaVie Original, MonaVie

17   Essential, MonaVie Active, MonaVie Pulse, MonaVie (M)mūn, MonaVie Kosher, and

18   MonaVie E.

19   3.    The Products cost at least $39.00 for a bottle of approximately 25 ounces,

20   and   consumers   can   purchase   them   through   MonaVie's   website,

21   http://www.monavie.com, and MonaVie's distributors, including Defendant Juicey

22   Acai.

23   4.    Defendants' scheme for hawking this overpriced fruit juice is almost

24   identical to that of another "health" drink product called Royal Tongan Limu, which

25   was manufactured and distributed by multi-level marketing company Dynamic

26   Essentials.  The Food and Drug Administration ("FDA") forced Dynamic Essentials to

27   cease and desist operations as a result of the unsubstantiated claims of therapeutic

28   benefits of Royal Tongan Limu espoused by Dynamic Essentials and its distributors.

5.      After the FDA caused Dynamic Essentials to shut down, Dallin Larsen – Dynamic Essentials's Vice President and the creator of the Royal Tongan Limu juice – moved on to create MonaVie and the Products and marketing scheme at issue here.

6.      Contrary to the misrepresentations made by Defendants, MonaVie is aware that no reliable clinical studies exist regarding açaí juice products.  Indeed, according to an internal company document authored by Ralph Carson – the purported creator of MonaVie's açaí juice and one-time "Chief Science Officer" – the juice is "expensive flavored water.  Any claims made are purely hypothetical, unsubstantiated and, quite frankly, bogus."[1]

7.      Furthermore, the FDA admonished MonaVie in 2007 for some of the same health claims that Defendants still make.[2]  In particular, the FDA warned that claims about the ability of MonaVie's products to cure, mitigate, treat, or prevent disease, even though such claims were unsubstantiated by any valid medical research, were serious violations of the Federal Food, Drug, and Cosmetic Act (FFDCA) and the applicable regulations promulgated pursuant to the FFDCA.

8.      Nevertheless, MonaVie makes claims on its website that its Products can "aid [one's] body in the fight against aging" and provide unique benefits to consumers' immune systems, hearts, and joints.

9.      As further detailed below, Plaintiffs purchased the Products in reliance upon such false, unfair, deceptive, and/or unconscionable representations, which Plaintiffs saw and heard through Defendants' mass marketing and advertising

---

[1] Tom Harvey, *Utah juice companies offer few prospects*, The Salt Lake Tribune, Dec. 13, 2011, http://www.sltrib.com/sltrib/mobile/53061545-90/monavie-company-distributors-percent.html.csp.

[2] *See* FDA Warning Letter to Kevin Vokes and MonaVie (July 6, 2007), http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/CyberLetters/ucm056937.pdf.

1  campaign.  If Plaintiffs had known that Defendants' representations were false and

2  misleading and that they were essentially paying for overpriced fruit juice, Plaintiffs

3  would not have purchased the Products.

4       10.     The purpose of this lawsuit is to redress the harm done to consumers as a

5  result of Defendants' fraudulent and deceptive practices.

6                          **JURISDICTION AND VENUE**

7       11.     This Court has original jurisdiction over this class action under 28 U.S.C.

8  § 1332(d), which explicitly provides for the original jurisdiction of the Federal Courts

9  in any class action where any member of the plaintiff class is a citizen of a State

10  different from the State of citizenship of any defendant, and in which the matter in

11  controversy exceeds the sum of $5,000,000, exclusive of interest and costs.  Plaintiff

12  Parker is a citizen of California, and Plaintiff Harbut is a citizen of Missouri, whereas

13  defendants MonaVie, Inc. and MonaVie LLC are citizens of Utah, and defendant

14  Juicey Acai, LLC is a citizen of California.  Therefore, diversity of citizenship exists

15  under CAFA.

16       12.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Plaintiff

17  Parker purchased the Product in this District.  Additionally, Defendant Juicey Acai

18  maintains its headquarters within this District, and a substantial part of the events or

19  omissions giving rise to Plaintiff Harbut's claims occurred within this District.

20                                  **PARTIES**

21       13.     Plaintiff Adam Parker is an individual consumer who, at all times

22  relevant to this lawsuit and the allegations contained herein, was a resident of

23  Thousand Oaks, California.  Mr. Parker purchased MonaVie (M)mūn from a retail

24  pharmacy in Newbury Park, California, on July 1, 2012.  The purchase was for

25  approximately $24.95.  Prior to purchasing the MonaVie Product, Mr. Parker saw,

26  heard, and relied upon advertisements, representations, and statements made by

27  MonaVie on the product's bottle about the alleged health benefits of drinking the

28  Products.  Mr. Parker would not have purchased the Product had he known that the

1   representations made by MonaVie were false and misleading.  As a result, Mr. Parker

2   suffered injury in fact and lost money due to MonaVie's violations of the law

3   described herein.  Additionally, despite consuming the (M)mūn product, Mr. Parker

4   experienced none of the dramatic improvements in his health that MonaVie

5   represented would occur from consuming the product.

6       14.    Plaintiff Andrew Harbut is an individual consumer who, at all times

7   relevant to this lawsuit and the allegations contained herein, was a resident of

8   Missouri.  Mr. Harbut made an online purchase of MonaVie (M)mūn from Defendant

9   Juicey Acai, LLC on September 29, 2011.  The purchase was in the amount of $42.45.

10  The item was shipped to Mr. Harbut at his home in St. Louis, Missouri.  Prior to

11  purchasing the MonaVie Product, Mr. Harbut saw, heard, and relied upon

12  advertisements, representations, and statements made by Defendants and other

13  members of the MonaVie enterprise about the alleged health benefits of drinking the

14  Products.  Mr. Harbut would not have purchased the Product had he known that the

15  representations made by Defendants were false and misleading.  As a result, Mr.

16  Harbut suffered injury in fact and lost money due to Defendants' violations of the law

17  described herein.  Additionally, despite consuming the (M)mūn product, Mr. Harbut

18  experienced none of the dramatic improvements in his health that Defendants

19  represented would occur from consuming the product.

20      15.    Defendant MonaVie, Inc. is a Utah corporation with its principal place of

21  business at 10855 South River Front Parkway, Suite 100, South Jordan, Utah 84095.

22  MonaVie, Inc. is in the business of advertising, selling, and distributing the MonaVie

23  Products and has been so engaged at all times relevant to the allegations contained

24  herein.

25      16.    Defendant MonaVie LLC is a limited liability company organized under

26  the laws of the state of Delaware with its principal place of business at 10855 South

27  River Front Parkway, Suite 100, South Jordan, Utah 84095.  MonaVie LLC is in the

28  business of advertising, selling, and distributing the MonaVie Products and has been

1   so engaged at all times relevant to the allegations contained herein.  MonaVie LLC

2   reportedly generated more than $2 billion in revenue from 2005 to 2010, according to

3   its CEO, Dallin Larsen.[3]

4        17.    Defendant Juicey Acai, LLC is a limited liability company organized

5   under the laws of the state of California with its principal place of business at 20652

6   Gelman Drive, Riverside, California 92508.   Juicey Acai, LLC distributes in the

7   business of introducing and selling the MonaVie Products online in the United States

8   and internationally and has been so engaged at all times relevant to the allegations

9   contained herein.

10              **COMMON FACTUAL ALLEGATIONS**

11                **False Immune System Claims**

12        18.    MonaVie makes false and misleading representations on the labels of its

13   Products.  For example, as seen below in a picture of one of Plaintiff Harbut's bottles

14   of MonaVie (M)mūn, the bottle has the following claim on it:

15              Daily defense for a healthier life.  MonaVie (M)mūn™ is a body-
16              beneficial blend of 19 fruits and Wellmune®, which has been
                clinically shown to strengthen your body's immune defenses.
17              Formulated with AçaVie™ – a proprietary açai complex packed
18              with free radical fighting antioxidants – this scientifically
                advanced juice combats cellular oxidation while helping protect
19              your body year round.  Optimize your body's natural defenses
20              with MonaVie (M)mūn today.

21

22

23

24

25   _____

26   [3] *See* Tom Harvey, *Utah juice companies offer few prospects*, The Salt Lake Tribune,
     Dec. 13, 2011, http://www.sltrib.com/sltrib/mobile/53061545-90/monavie-company-
27   distributors-percent.html.csp.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    19.    Defendant Juicey Acai mirrors this language on its website.[4]

16    20.    These representations on the Products and on distributor websites,

17 including the name of the (M)mūn Product, which is pronounced "immune," convey

18 to consumers that the Products can provide certain health benefits.

19    21.    Unfortunately for consumers, antioxidant supplementation can have

20 *adverse health effects*.  For this reason, the Harvard Medical School recently advised

21 consumers:  "***Do not take antioxidant supplements.***"[5]

22    22.    Moreover, MonaVie and its distributors encourage daily consumption of

23 the Products beyond one serving a day.  Therefore, even supposing the Products do

24

25 [4] http://juiceyacai.com/product_info.php?products_id=81 (last visited June 25, 2012).

26
27 [5] Harvard Medical School, *Supplements: A Scorecard*, Harvard Men's Health Watch, Apr. 2012, at 2 (emphasis added).

28

provide some sort of benefit to consumers' immune systems, the amount of consumption recommended by Defendants could be harmful because an overactive immune system attacks the body's own healthy tissues.

23.    For this reason, the Federal Trade Commission ("FTC") and the FDA have sought to put a halt to such claims.  As discussed above, the FDA sent a warning letter to MonaVie and one of its distributors in 2007 regarding unauthorized representations about purported health benefits.

24.    In 2008, the FTC settled a lawsuit against the makers of Airborne, who agreed to pay up to $30 million in regard to claims that their Airborne products could help treat the common cold when, in reality, the products were just overpriced, run-of-the-mill vitamin pills.[6]  Similarly to how Defendants market the MonaVie Products, marketing materials for Airborne touted it as a unique formula of "Herbal Extracts, Antioxidants, Electrolytes, and Amino Acids" that offered protection against illness.[7]

25.    In July 2009, the FTC announced that national pharmacy chain Rite Aid Corporation had agreed to pay $500,000 to settle FTC charges regarding false and misleading claims that its "Germ Defense" tablets and lozenges could prevent and treat colds and the flu or reduce the severity and duration of illness.[8]

26.    In September 2009, the FTC announced that national retailer CVS Pharmacy Inc. had agreed to pay $2.8 million to settle FTC charges regarding false and misleading claims that its "AirShield" dietary supplements could prevent colds, fight germs, and boost one's immune system.[9]

---

[6] *See* http://www.ftc.gov/opa/2008/08/airborne.shtm.

[7] *See. e.g.*, http://www.ftc.gov/os/caselist/0723183/080814airbornecomplaint.pdf 34.

[8] *See* http://www.ftc.gov/opa/2009/07/riteaide.shtm.

[9] *See* http://www.ftc.gov/opa/2009/09/cvs.shtm.

27.     In March 2010, national pharmacy chain Walgreens agreed to pay nearly $6 million to settle FTC charges regarding false and misleading claims that its "Wal-Born" products – a line of dietary supplements similar to the Airborne cold-and-flu treatment –could prevent colds, fight germs, and boost one's immune system.[10]

28.     Despite all these cases and the FDA's specific admonishment regarding the marketing of MonaVie's products, MonaVie and its distributors continue to market and sell the MonaVie Products as having health and medicinal benefits that they do not have, and Defendants make such representations knowing that they have insufficient evidence to support them.

29.     Distributors clearly take their cues from MonaVie itself, though, which has been sued before for its false and misleading representations.[11]  MonaVie's deceptive representations, as detailed herein, encourage even more egregious representations by its distributors.

30.     Despite knowing that its distributors, including Defendant Juicey Acai, were engaging in or planned to engage in the violations of law described in this Complaint, MonaVie facilitated the commission of those unlawful acts.  MonaVie intended to and did encourage, facilitate, or assist in the commission of the unlawful acts and thereby aided and abetted its distributors, including Defendant Juicey Acai, in the unlawful conduct.

**False and Deceptive Use of the**

**Oxygen Radical Absorbance Capacity Scale**

31.     On its website, MonaVie emphasizes the "Oxygen Radical Absorbance Capacity" ("ORAC") value of its Products to make health benefit claims, but such claims are misleading and/or medically, statistically, and scientifically unsound.

_____

[10] *See* http://www.ftc.gov/opa/2010/03/walgreens.shtm.

[11] *See, e.g.*, *Oliver v. Mona Vie, Inc.*, No. 11-cv-04125 (W.D. Ark.).

32.   ORAC is determined by a laboratory analysis that measures the total antioxidant power – *i.e.*, ability to neutralize oxygen free radicals – of foods and other chemical substances.  ORAC testing is a way to measure how many oxygen radicals a specific food can absorb and, thereby, neutralize.  The more oxygen radicals a food can absorb, the higher its ORAC "score."

33.   MonaVie represents that the "açaí berry is the crown jewel of the MonaVie blend.  When properly freeze-dried, açaí boasts an ORAC score higher than that of any other fruit or vegetable tested to date, based on available USDA data."[12]

34.   Similarly, on its website, MonaVie states that "freeze-dried Acai and Jucara are far and away more ORAC rich than many dehydrated fruits and vegetables."[13]   Directly following a chart demonstrating this representation, the website then states:

> Insight:  MonaVie's premier juice blends contain powerful nutrients that aid your body in the fight against aging and other symptoms of oxidative stress.  In fact, just four ounces provide you with the antioxidant capacity of approximately 13 servings of common fruits and vegetables.[14]

35.   MonaVie's emphasis on ORAC is misleading, in part because there is no industry standard for measuring ORAC scores.  Furthermore, different growing and harvesting conditions, including the season and temperature, also influence the ORAC

---

[12] *See, e.g.*, MONAVIE AND MONAVIE GEL, PRODUCT INFORMATION PAGE, available at https://www.monavievo.com/corporate/documents/MonaVie%20Original%20PIP_4-14-08.pdf.

[13] MonaVie Business Intelligence, *MBI – What does ORAC Mean?*, Apr. 16, 2012, http://www.monavie.com/news/view/mbi--what-does-orac-mean-.

[14] *Id.*

1  score of a particular plant by as much as fourfold.  The ORAC score can be influenced

2  by how the plant material is dealt with – for instance, cooking, freezing, and storage.

3      36.    When comparing ORAC data, care must be taken to ensure that the units

4  and food being compared are similar.  Some evaluations compare ORAC units per

5  grams dry weight, others evaluate ORAC units' wet weight, and others compare

6  ORAC units per serving.  Under each evaluation, different foods can appear to have

7  higher ORAC scores.  Although a raisin has no more antioxidant potential than the

8  grape from which it was dried, raisins will appear to have a much higher ORAC value

9  per gram wet weight than grapes due to their reduced water content.  Likewise, the

10  large water content of watermelons can make it appear as though they are very low in

11  antioxidants.  In short, to accurately compare ORAC scores, one must consider the

12  amount of water in the food sample.  The more water, the lower the ORAC score per

13  gram of that food.  When something is freeze-dried, the water is removed.  With all

14  the water weight taken out, a nutrient-dense power remains, resulting in relatively

15  high ORAC scores.

16      37.    Furthermore, MonaVie's representations about ORAC are misleading

17  because there is a limit to the benefits a person may derive from antioxidant intake.  A

18  significant increase in antioxidants of 15 to 20 percent is possible by increasing

19  consumption of fruits and vegetables, particularly those high in ORAC value.

20  However, MonaVie fails to disclaim that, in order to have a significant impact on

21  plasma and tissue antioxidant capacity, one can only meaningfully increase one's

22  daily intake by 3,000 to 5,000 ORAC units.  Any greater amount is not efficacious

23  because the antioxidant capacity of the blood is tightly regulated.  Thus, there is an

24  upper limit to the benefit that can be derived from antioxidants.  Taking in 25,000

25  ORAC units at one time would be no more beneficial than taking in a fifth of that

26  amount; the excess is simply excreted by the kidneys.

27      38.    While MonaVie uses ORAC scores to claim that four ounces of its

28  Products is the antioxidant equivalent of eating 13 common fruits, thereby giving the

perception that drinking four ounces of MonaVie is equivalent to eating 13 fruits, MonaVie does not provide any disclaimer that would address the issues identified above.

39.     While MonaVie also references various studies on its website to back up its claims, there are no reliable studies on commercially available products containing açaí.  The studies MonaVie used are medically, statistically, and scientifically unsound and, thereby, misleading.

40.     In an independent study commissioned by *Men's Journal* to test various fruit juices, MonaVie scored poorly on all criteria.[15]  The criteria were phenolic acids, which purportedly help prevent cancer; anthocyanins, which purportedly help prevent aging; Vitamin C, which purportedly aids in healing wounds; and beta-carotene, which purportedly supports the immune system.  MonaVie tested "extremely low in anthocyanins and phenolics.  Even apple juice (which also tested poorly) has more phenolics than [MonaVie's] juice.  Plus, MonaVie's vitamin C level was five times lower than that of Welch's Grape Juice.  That's not many nutrients, especially at $1.20 a serving."[16]

41.     MonaVie is just an expensive way to potentially get an amount of antioxidants that a consumer could obtain from much cheaper sources.  The MonaVie Products sell for about $40 for a 25.3 ounce bottle, or about $4 to $6 per day if the Product is used as directed on the bottle.  According to many published studies in the National Institute of Medicine database on ORAC scores for all kinds of fruits and vegetables, the ones that tend to be the highest include blueberries, raspberries, kale,

---

[15] *See* Jamie Beckman, *Superjuices on Trial*, Men's Journal, Dec. 4, 2008, *available at* http://archive.mensjournal.com/superjuices-on-trial; *see also Men's Journal Proves MonaVie Lacks Nutrition*, http://www.juicescam.com/mens-journal-proves-monavie-lacks-nutrition.

[16] *Id.*

1   spinach, prunes, and others, none of which cost nearly as much as MonaVie Products.

2   Organically grown blueberries, for instance, are more available, much less expensive,

3   and provide much fiber as well as plenty of antioxidant activity.

4       42.    Furthermore, while the açaí berry has a value of 161,400 units per 100

5   grams, a common household spice such as cinnamon has an ORAC value of 267,536

6   units per 100 grams, and ground cinnamon is much cheaper than açaí juices even

7   though it has comparable health benefits.

8       43.    Additionally, Wellmune, the main ingredient of (M)mūn, is a registered

9   trademark of Biothera and is another name for WGP 3-6.  Sixty pills of WGP 3-6 at

10  250 mg strength can be purchased for less than $20 and can last for about two months,

11  which makes it a much cheaper alternative to the $45 MonaVie bottle, which only

12  lasts one week.[17]

13      **Misleading Claims Based on Polyphenol Content**

14      44.    Polyphenols are antioxidants in plants that many believe confer

15  substantial health benefits.  They work by neutralizing free radicals, which are known

16  to cause a number of health problems.  They may protect against some common health

17  problems and possibly certain effects of aging.  They can also block the action of

18  enzymes that cancer needs for growth and can deactivate substances that promote the

19  growth of cancer.

20      45.    Regarding the purported benefits of polyphenols in its Products,

21  MonaVie states the following:

22          Dedicated to unlocking, sharing, and protecting the earth's most

23          unique, health-giving resources, ***MonaVie combines science and nature to bring you the highest quality products possible.***

24

25

26  [17] *See* MonaVie Scam – MonaVie's Wellmune Is Cheaply Available,
27  http://www.juicescam.com/monavies-wellmune-is-cheaply-available/ (last visited June 25, 2012).

28

•Based upon millions of dollars in clinical research
•Supported by more than 60 independent scientific studies

\* \* \*

Though your body inherently creates some antioxidants, these life-protecting phytonutrients are generally found in richly pigmented fruits and vegetables. ***While thousands of antioxidants are found in nature, polyphenol and flavonoids (a class of polyphenols) are two of the most effective***.

\* \* \*

Polyphenols are natural chemicals responsible for the color, flavor, and scent in fruits and vegetables. ***Deeply pigmented berries such as açai are especially high in these antioxidant compounds.*** Found mostly in the outer layer of fruits, polyphenols offer protection from harmful bacteria and ultraviolet light. ***In humans, polyphenols protect your body from oxidative damage and support cardiovascular health.***[18]

46.     Contrary to the scientific research to which MonaVie refers, there is no evidence that fruit polyphenols have antioxidant effects in the human body.[19]

47.     Dr. Peter Hoffman, an associate professor at RIKILT, which is an institute of food safety at Wageningen University in the Netherlands, has spent thirty years researching polyphenols.  Dr. Hoffman has concluded that polyphenols do not

---

[18] http://www.monavie.com/products/health-juices ("Science" tab (emphasis added)).

[19] *See* European Food Safety Authority, *Scientific Opinion on the substantiation of health claims related to various food(s)/food constituent(s) and protection of cells from premature aging, antioxidant activity, antioxidant content and antioxidant properties, and protection of DNA, proteins and lipids from oxidative damage pursuant to Article 13(1) of Regulation (EC) No 1924/2006*, EFSA Journal 2010, *available at* http://www.efsa.europa.eu/en/scdocs/doc/1489.pdf (discussing demonstrated effect *in vitro* but not *in vivo*); Shane Starling, *Veteran researcher: Polyphenols don't work as antioxidants in vivo, but…*, Nutraingredients.com Newsletter, Jul. 12, 2010, *available at* http://www.nutraingredients.com/Research/Veteran-researcher-Polyphenols-don-t-work-as-antioxidants-in-vivo-but.

1  work as antioxidants when ingested in foods and supplements because the human

2  body makes enough of its own.[20]

3  <center>**CLASS ALLEGATIONS**</center>

4      48.     This action has been brought, and may be properly maintained, under

5  Federal Rule of Civil Procedure 23(a)(1)-(4), (b)(2), and (b)(3).

6      49.     Plaintiffs brings this action as a class action, on behalf of themselves and

7  all others similarly situated, initially defined to be all persons who purchased the

8  MonaVie Products for the sole purpose of personal consumption from November 13,

9  2008, to the date of class certification (the "Class Period").  Excluded from the Class

10  are Defendants; members of the immediate families of the officers and directors of

11  Defendants; their legal representatives, heirs, successors, or assigns; any entity in

12  which they have or have had a controlling interest; and any entity that purchased

13  MonaVie Products for resale.

14      50.     Plaintiff Parker also brings this action on behalf of a sub-class of

15  Californians who purchased MonaVie Products for the purpose of personal

16  consumption during the Class Period (the "California Sub-Class").

17      51.     Plaintiff Harbut also brings this action on behalf of a sub-class of

18  Missouri residents who purchased MonaVie Products for the purpose of personal

19  consumption during the Class Period (the "Missouri Sub-Class").

20      52.     **Numerosity –** Fed. R. Civ. P. 23(a)(1): The members of the Class are so

21  numerous and widely dispersed that joinder of them in one action is impractical. On

22  information and belief, thousands of individuals throughout the United States have

23  purchased MonaVie Products.

24      53.     **Existence and Predominance of Common Questions of Law and Fact**

25  **–** Fed. R. Civ. P. 23(a)(2); 23(b)(3): Common questions of law and fact exist as to all

26  _____

27  [20] *Id.*

28

members of the Class and predominate over any questions affecting only individual
Class members.   These common legal and factual questions include, but are not
limited to, the following:

      a.    whether MonaVie engaged in an overarching scheme between
itself and its distributors to wrongfully profit by creating and
approving false and/or misleading advertisements and statements
about the health benefits of the Products;

      b.    whether the purpose of the MonaVie scheme is to increase sales of
the Products and, thus, the profits of all participants in the scheme;

      c.    whether Defendants created false or misleading advertisements
and/or statements about the Products that were made public;

      d.    whether MonaVie concealed, suppressed, or omitted material
information about the lack of proven benefits of the Products;

      e.    whether MonaVie had a duty to be honest and forthright with
consumers about the lack of proven benefits of the Products;

      f.    whether MonaVie allowed its trademark or corporate identity to
be used on false or misleading advertisements or statements about
the Products;

      g.    whether the representations about the content of the Products by
Defendants were accurate; and

      h.    whether the representations about the nutritional contents of the
Products by Defendants are provable by generally accepted,
laboratory-based scientific analysis.

54.   **Typicality –** Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the
claims of the Class because Plaintiffs, like all other members of the Class, purchased
the Products at a premium in a typical consumer setting and sustained damages from
Defendants' wrongful conduct.   Thus, the claims of Plaintiffs and other members of

1    the Class are based on the same legal theories and arise from the same unlawful and

2    willful conduct.

3        55.   **Adequacy of Representation –** Fed. R. Civ. P. 23(a)(4): Plaintiffs are

4    adequate representatives of the Class because their interests do not conflict with the

5    interests of the other Class members they seek to represent.  Plaintiffs have retained

6    competent and experienced class action counsel who intend to vigorously prosecute

7    the action.  The Class members' interests will be fairly and adequately protected by

8    Plaintiffs and their counsel.

9        56.   **Injunctive Relief –** Fed. R. Civ. P. 23(b)(2): The prerequisites to

10    maintaining a class action for injunctive or equitable relief are met as Defendants have

11    acted or refused to act on grounds generally applicable to the Class, thereby making

12    appropriate final injunctive or equitable relief with respect to the Class as a whole.

13        57.   **Superiority –** A class action is superior to other available methods for

14    the fair and efficient adjudication of this controversy since joinder of all the Class

15    members is impracticable.  The amount at stake for each consumer is such that

16    individual litigation would be inefficient and cost prohibitive.  Additionally, the

17    adjudication of this controversy through a class action will avoid the possibility of

18    inconsistent and potentially conflicting adjudication of the claims asserted herein.

19    There will be no difficulty in the management of this action as a class action.

20        58.   **Notice –** Plaintiffs and their counsel anticipate that notice to the proposed

21    Class will be effectuated by publication in major newspapers and on the Internet.

22                           **<u>CAUSES OF ACTION</u>**

23                              **<u>COUNT I</u>**

24             **(Fraud, Deceit, and Misrepresentation)**

25        59.   Plaintiffs incorporate by reference and reallege all paragraphs previously

26    alleged herein.

27        60.   Defendants, through their labeling, advertising, and marketing of the

28    Products, make representations and offers regarding the quality of their products as

1   described above.  Defendants engaged and continue to engage in such fraudulent,

2   misrepresentative, false, and/or deceptive acts with full knowledge that such acts

3   were, and are, in fact, misrepresentative, false, or deceptive.

4           61.    The aforementioned fraud, misrepresentations, deceptive, and/or false

5   acts and omissions concern material facts that are essential to the analysis undertaken

6   by Plaintiffs and those similarly situated in deciding whether to purchase Defendants'

7   Products.

8           62.    Plaintiffs and those similarly situated would have acted differently had

9   they not been misled – *i.e.* they would not have paid money for the Products in the

10  first place or they would not have paid the exorbitant premium for the Products.

11          63.    Defendants have a duty to correct the misinformation they disseminate

12  through their advertising of the Products.  By not informing Plaintiffs and those

13  similarly situated, Defendants breached this duty.  Defendants also gained financially

14  from and as a result of this breach.

15          64.    By and through such fraud, deceit, misrepresentations, and/or omissions,

16  Defendants intended to induce Plaintiffs and those similarly situated to alter their

17  positions to their detriment.

18          65.    Plaintiffs and those similarly situated justifiably and reasonably relied on

19  Defendants' misrepresentations, and, as such, were damaged by Defendants.

20          66.    As a direct and proximate result of Defendants' fraud, deceit, and/or

21  misrepresentations, Plaintiffs and those similarly situated have suffered damages in an

22  amount equal to the amount they paid for Defendants' Products.  The exact amount of

23  this difference will be proven at trial.

24          67.    Defendants acted with intent to defraud or with reckless or negligent

25  disregard of the rights of Plaintiffs and those similarly situated.

26          68.    THEREFORE, Plaintiffs pray for relief as set forth below.

27

28

## COUNT II

### (Violation of Utah Consumer Sales Practices Act)

69. Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

70. At all relevant times, purchases by Plaintiffs and the other Class members of Defendants' Products constituted "consumer transactions" within the meaning of the Utah Consumer Sales Practices Act (UCSPA), Utah Code Ann. §§ 13-11-1 *et seq.*, because such purchases constituted sales of goods to persons (1) primarily for personal, family, or household purposes or (2) for purposes that related to a business opportunity that required expenditure of money or property by the purchaser and required the purchaser to perform personal services on a continuing basis and in which the purchaser had not been previously engaged.

71. At all relevant times, each Defendant was a "supplier," as that term is defined in Section 3, subsection 6 of the UCSPA, Utah Code Ann. § 13-11-3(6), as they were each and all sellers, lessors, assignors, offerors, brokers, or other persons who regularly solicited, engaged in, or enforced consumer transactions.

72. As described in detail above, Defendants uniformly misrepresented to Plaintiffs and each member of the Class, by means of advertising, marketing, and other promotional materials, including the Products' labeling and packaging, that the Products had particular health benefits that they did not.

73. Defendants have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products – engaged in practices that constitute deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and/or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. Therefore, Defendants have engaged in unconscionable acts or practices in connection with a consumer transaction in violation of the UCSPA, Utah Code Ann. § 13-11-5.

74.     As a direct and proximate result of Defendants' improper conduct, Plaintiffs and the other members of the Class have suffered damages and ascertainable losses of moneys and/or property, in amounts to be determined by the Court or jury, by paying more for the Products than they would have and/or by purchasing the Products when they would not have if the benefits of the Products had not been misrepresented.

75.     THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT III

### (Violation of Missouri's Merchandising Practices Act)

### (on behalf of Missouri Sub-Class)

76.     Plaintiff Harbut incorporates by reference and realleges all paragraphs previously alleged herein.

77.     Plaintiff Harbut brings this cause of action on behalf of himself and the Missouri Sub-Class.

78.     Section 2 of the Missouri's Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.010, provides the following:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice. . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

79.     At all relevant times, each Defendant was and is a "person," as that term is defined by MMPA § 1(5), Mo. Rev. Stat. § 407.010(5), because each is a "partnership, firm, for-profit or not-for-profit corporation, whether domestic or foreign, company, foundation, trust, business entity or association."

80.     At all relevant times, the MonaVie Products constituted "merchandise," as that term is defined by MMPA § 1(4), Mo. Rev. Stat. § 407.010(4), because the Products are "objects, wares, goods, [or] commodities."

81.     At all relevant times, Defendants' manufacturing, marketing, advertising, sales and/or distribution of MonaVie Products met the definition of "sale" set forth by MMPA § 1(6), Mo. Rev. Stat. § 407.010(6), because such manufacturing, marketing, advertising, sales, and/or distribution constituted a "sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit."

82.     At all relevant times, Defendants' manufacturing, marketing, advertising, sales, and/or distribution of MonaVie Products met the definition of "advertisement" set forth by MMPA § 1(1), Mo. Rev. Stat. § 407.010(1), because such manufacturing, marketing, advertising, sales, and/or distribution constituted an "attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise."

83.     At all relevant times, Defendants' sale or advertisement of the merchandise at issue occurred in "trade" or "commerce," as those terms are defined in MMPA § 1(7), Mo. Rev. Stat. § 407.010(7), because such sale or advertisement constituted "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated." Additionally, such sale or advertisement directly or indirectly affected the people of Missouri, which is conduct explicitly included in the definition of "'[t]rade' or 'commerce'" set forth in MMPA § 1(7).

84.     As described in detail above, Defendants uniformly misrepresented to Plaintiff Harbut and each member of the Missouri Sub-Class, by means of advertising, marketing, and other promotional materials, and on the Products' labeling and packaging, that the Products had particular health benefits that they did not.

85.    Defendants have thereby – in their manufacturing, advertising, marketing, selling, and distribution of the Products, as detailed herein – engaged in practices that constitute deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.   Therefore, Defendants have violated the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.*

86.    As a direct and proximate result of Defendants' improper conduct, Plaintiff Harbut and other members of the Missouri Sub-Class have suffered damages and ascertainable losses of moneys and/or property, in amounts to be determined by the Court or jury, by paying more for the Products than they would have and/or by purchasing the Products when they would not have if the benefits of the Products had not been misrepresented.

87.    THEREFORE, Plaintiff Harbut prays for relief as set forth below.

<u>**COUNT IV**</u>

**(Violation of California's Consumers Legal Remedies Act)**

**(on behalf of California Sub-Class)**

88.    Plaintiff Parker incorporates by reference and realleges all paragraphs previously alleged herein.

89.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (the "CLRA"), on behalf of Plaintiff Parker and the California Sub-Class.  This cause of action does not seek monetary damages at this point but is limited solely to injunctive relief.  Plaintiffs will amend this class action Complaint to seek damages in accordance with the CLRA after providing Defendant with notice pursuant to California Civil Code § 1782.

90.    Plaintiff Parker and the other members of the California Sub-Class are "consumers," as that term is defined by California Civil Code § 1761(d), because they bought MonaVie Products for personal, family, or household purposes.

91.     Plaintiff Parker, the other members of the California Sub-Class, and Defendants have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

92.     The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendants in transactions intended to result in, and which did result in, the sale of goods to consumers.

93.     As alleged more fully above, Defendants have violated the CLRA by falsely representing to Plaintiff Parker and the other California Sub-Class members that MonaVie Products had certain benefits that they do not have.

94.     As a result of engaging in such conduct, Defendants have violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

95.     The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff Parker and other members of the California Sub-Class.

96.     Plaintiff Parker and the other members of the California Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

97.     THEREFORE, Plaintiff Parker prays for relief as set forth below.

## COUNT V

### (Violation of California's False Advertising Law)

### (on behalf of California Sub-Class)

98.     Plaintiff Parker incorporates by reference and realleges all paragraphs previously alleged herein.

99.     Plaintiff Parker brings this cause of action on behalf of himself and the other members of the California Sub-Class.

100.    As alleged above, Defendants – in violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500 *et seq.*

1 – have falsely advertised and marketed MonaVie Products by falsely claiming that the

2 Products had certain benefits that they do not have.

3       101.   Plaintiff Parker and the other members of the California Sub-Class have

4 suffered injury in fact and have lost money or property as a result of Defendants'

5 violations of the FAL.

6       102.   THEREFORE, Plaintiff Parker prays for relief as set forth below.

7                                   **COUNT VI**

8                 **(Violation of California's Unfair Competition Law)**

9                     **(on behalf of California Sub-Class)**

10       103.   Plaintiff Parker incorporates by reference and realleges all paragraphs

11 previously alleged herein.

12       104.   By committing the acts and practices alleged herein, Defendants have

13 engaged in deceptive, unfair, and unlawful business practices – in violation of

14 California's Unfair Competition Law ("UCL"), California Business and Professions

15 Code §§ 17200 *et seq.* – as to the Class as a whole.

16       105.   Defendants have violated the UCL's proscription against engaging in

17 unlawful conduct as a result of (i) their violations of the CLRA, Cal. Civ. Code

18 § 1770(a)(5), (a)(7), and (a)(9), as alleged above, and (ii) their violations of the FAL,

19 Cal. Bus. & Prof. Code §§ 17500 *et seq.*, as alleged above.

20       106.   In addition, Defendants have violated the UCL's proscription against

21 engaging in unlawful conduct as a result of their violations of the Sherman Law, Cal.

22 Health & Safety Code §§ 109875 *et seq.*, which forbids (1) misbranding of any food

23 or drug, *id.* §§ 10398 and 111445, and (2) manufacturing, selling, delivering, holding,

24 or offering for sale any food or drug that is misbranded or delivering or proffering

25 such for delivery, *id.* §§110770 and 111450.

26       107.   The Sherman Law provides that a product is misbranded "if its labeling is

27 false or misleading in any particular." *Id.* § 110660.  In determining whether the

28 labeling or advertisement of a food, drug, device, or cosmetic is misleading, all

1  representations made or suggested by statement, word, design, device, sound, or any

2  combination of these, shall be taken into account.  The extent that the labeling or

3  advertising fails to reveal facts concerning the food, drug, device, or cosmetic or

4  consequences of customary use of the food, drug, device, or cosmetic shall also be

5  considered.  *Id.* § 110290.

6      108.  Defendants' acts and practices described above also violate the UCL's

7  proscription against engaging in fraudulent conduct.

8      109.  As more fully described above, Defendants' misleading marketing,

9  advertising, packaging, and labeling of the MonaVie Products is likely to deceive

10 reasonable consumers.   Indeed, Plaintiff Parker and the other members of the

11 California Sub-Class were unquestionably deceived regarding the health benefits of

12 the Products, as Defendants' marketing, advertising, packaging, and labeling of the

13 Products misrepresent and/or omit the true facts concerning the benefits of the

14 Products.  Said acts are fraudulent business practices.

15     110.  Defendants' acts and practices described above also violate the UCL's

16 proscription against engaging in unfair conduct.

17     111.  Plaintiff Parker and the other members of the California Sub-Class who

18 purchased MonaVie Products suffered a substantial injury by virtue of buying a

19 product they would not have purchased absent Defendants' unlawful, fraudulent, and

20 unfair marketing, advertising, packaging, and labeling or by paying an excessive

21 premium price for the unlawfully, fraudulently, and unfairly marketed, advertised,

22 packaged, and labeled Products.

23     112.  There is no benefit to consumers or competition from deceptively

24 marketing and labeling dietary supplements.  Indeed, the harm to consumers and

25 competition is substantial.

26     113.  Plaintiff Parker and the other members of the California Sub-Class who

27 purchased MonaVie Products had no way of reasonably knowing that the Products

28

1   they purchased were not as marketed, advertised, packaged, and labeled.  Thus, they

2   could not have reasonably avoided the injury each of them suffered.

3       114.   The gravity of the consequences of Defendants' conduct as described

4   above outweighs any justification, motive, or reason therefore, particularly

5   considering the available legal alternatives that exist in the marketplace, and such

6   conduct is immoral, unethical, unscrupulous, offends established public policy, and/or

7   is substantially injurious to Plaintiff Parker and the other members of the California

8   Sub-Class.

9       115.   Defendants' violations of the UCL continue to this day.

10       116.   THEREFORE, Plaintiff Parker prays for relief as set forth below.

11   <div align="center">**COUNT VII**</div>

12   <div align="center">**(Civil conspiracy in violation of Utah common law)**</div>

13       117.   Plaintiffs incorporate by reference and reallege all paragraphs previously

14   alleged herein.

15       118.   Utah courts have held that Plaintiffs must show the following elements to

16   prove a claim of civil conspiracy: (1) a combination of two or more persons, (2) an

17   object to be accomplished, (3) a meeting of the minds on the object or course of

18   action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result

19   thereof.

20       119.   MonaVie conspired with Juicey Acai, along with its other distributors

21   and members of the MonaVie enterprise, to create a false and misleading belief that

22   the MonaVie Products were worth the exorbitant price paid for them with the goal of

23   selling as much of the Products as possible. This conspiracy was perpetuated by the

24   creation and use of false or misleading advertisements and statements related to the

25   content of the Products.

26       120.   MonaVie actively encouraged such acts, was aware of them, implicitly

27   consented to them, and tacitly approved of them.  Conspiracy may be inferred from

28

1    circumstantial evidence, including the nature of the act done, the relations of the
2    parties, and the interests of the alleged conspirators.

3         121.    As a proximate result of Defendants' acts, Plaintiffs and the other Class
4    members suffered damage when they purchased the Products at a wrongfully inflated
5    prices.

6         122.    THEREFORE, Plaintiffs pray for relief as set forth below.

7                              **<u>COUNT VIII</u>**

8                    **(Violation of the Magnuson-Moss Act)**

9         123.    Plaintiffs incorporates by reference and realleges all paragraphs
10   previously alleged herein.

11        124.    The Magnuson-Moss Warranty-Federal Trade Commission Improvement
12   Act (the "Magnuson-Moss Act"), 15 U.S.C. §§ 2301 *et seq.*, provides in section
13   110(d)(1) that "a consumer who is damaged by the failure of a supplier, warrantor, or
14   service contractor to comply with any obligation under [the Magnuson-Moss Act], or
15   under a written warranty, implied warranty, or service contract, may bring suit for
16   damages and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).

17        125.    At all relevant times, Plaintiffs and the other Class members were
18   "consumers," as that term is defined in 15 U.S.C. § 2301(3), because each was "a
19   buyer (other than for purposes of resale) of any consumer product, any person to
20   whom such product is transferred during the duration of an implied or written
21   warranty (or service contract) applicable to the product, and any other person who is
22   entitled by the terms of such warranty (or service contract) or under applicable State
23   law to enforce against the warrantor (or service contractor) the obligations of the
24   warranty (or service contract)."

25        126.    At all relevant times, Defendants were "suppliers," as that term is defined
26   in 15 U.S.C. § 2301(4), because each was a "person engaged in the business of
27   making a consumer product directly or indirectly available to consumers."  Although

28

1    the Magnuson-Moss Act does not define "person," case law applies the Magnuson-

2    Moss Act to businesses as well as individuals.

3        127.  At all relevant times, Defendants were "warrantors," as that term is

4    defined in 15 U.S.C. § 2301(5), because each was a "supplier or other person who

5    gives or offers to give a written warranty or who is or may be obligated under an

6    implied warranty."

7        128.  The MonaVie Products purchased by Plaintiffs and the other Class

8    members were "consumer products," as that term is defined in 15 U.S.C. § 2301(6),

9    because the MonaVie Products were "tangible personal property which is distributed

10    in commerce and which is normally used for personal, family, or household

11    purposes."

12        129.  By reason of Defendants' breach of their express warranties regarding the

13    ability of their Products to strengthen the body's immune system and aid the body in

14    fighting against aging and various diseases, Defendants have caused economic

15    damage to Plaintiffs and the other Class members and have violated the statutory

16    rights due to them under the Magnuson-Moss Act.

17        130.  THEREFORE, Plaintiffs pray for relief as set forth below.

18                        **COUNT IX**

19           **(Violations of Section 1962(c) and (d) of**

20     **The Racketeer Influenced and Corrupt Organizations Act)**

21        131.  Plaintiffs incorporate by reference and reallege all paragraphs previously

22    alleged herein.

23        132.  At all relevant times, Defendants were "persons," as that term is defined

24    in Section 1961(3) of The Racketeer Influenced and Corrupt Organizations Act (the

25    "RICO Act"), 18 U.S.C. § 1961(3).

26        133.  At all relevant times, Defendants have conducted or participated, directly

27    or indirectly, in the management and operation of an "enterprise," as that term is

28    defined in 18 U.S.C. § 1961(4), through a "pattern of racketeering activity," as that

1  term is defined in 18 U.S.C. § 1961(5), thereby damaging Plaintiffs and the other
2  Class members in violation of 18 U.S.C. § 1962(c).

3      134.  At all relevant times, Defendants have conspired to conduct or
4  participate, directly or indirectly, in the management of an enterprise through a pattern
5  of racketeering activity, in violation of 18 U.S.C. § 1962(d).

6      135.  At all relevant times, Defendants did willfully and with the purpose to
7  defraud consumers, engage in fraudulent conduct, including acts constituting wire
8  fraud, in violation of 18 U.S.C. § 1343, by engaging in acts that include the following:

9          a.    fraudulently representing that the MonaVie Products benefit the
10                immune system;
11         b.    fraudulently using false and misleading testimonials to support
12                unrealistic claims about MonaVie Products;
13         c.    fraudulently using the ORAC value of the açai berry to mislead
14                consumers about the antioxidant benefits of MonaVie Products;
15         d.    fraudulently creating the perception that drinking four ounces of
16                the Products is equivalent to eating 13 common fruits; and
17         e.    fraudulently using scientifically and statistically unsound studies
18                to support claims regarding the Products.

19     136.  As a result of the foregoing fraudulent activities, Defendants have
20  engaged in a pervasive pattern of unlawful and unfair business practices, causing harm
21  to Plaintiffs and the other members of the Class.  Defendants' fraudulent conduct, as
22  described above, constitutes a scheme or artifice to defraud Plaintiffs and the other
23  Class members.

24     137.  In furtherance of and for purposes of executing the above-described
25  fraudulent and illegal course of conduct and scheme to defraud, Defendants, either
26  individually or in combination with themselves, used and caused to be used the
27  Internet to disseminate false, fraudulent, and misleading communications and
28  information, in violation of the wire fraud statute, 18 U.S.C. § 1343.

138.   Each of the false, deceptive, and misleading misrepresentations and claims that were made in furtherance of Defendants' scheme to defraud Plaintiffs and the other Class members constitute separate and distinct acts of "racketeering activity," as that term is defined in 18 U.S.C. § 1961(1).

139.   The fraudulent and deceptive activities engaged in by Defendants in marketing the MonaVie Products to Plaintiffs and the other Class members involve and affect interstate commerce.  Defendants market, sell, and deliver the Products throughout the United States.

140.   Plaintiffs and the other Class members, by purchasing the MonaVie Products, have been injured in their business or property and, therefore, have standing to sue Defendants and recover damages and the costs of bringing this class action under 18 U.S.C. § 1964(c).

141.   By virtue of their violations of 18 U.S.C. § 1962(c) and (d), Defendants are jointly and severally liable to Plaintiffs and the other Class members for three times the damages that Plaintiffs and the other Class members suffered as a result of Defendants' scheme to defraud.

142.   THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT X

### (Violations of Sections 76-10-1603(3) and (4) of
### the Utah Pattern of Unlawful Activity Act)

143.   Plaintiffs incorporate by reference and reallege all paragraphs previously alleged herein.

144.   At all relevant times, Defendants were "persons," as that term is defined in Section 76-10-1602(3) of the Utah Pattern of Unlawful Activity Act ("UPUAA"), Utah Code Ann. § 76-10-1602(3).

145.   At all relevant times, Defendants have conspired to conduct and/or participate in, directly or indirectly, the management and operation of an "enterprise," as that term is defined in Utah Code Ann. § 76-10-1602(1), through a "pattern of

1  unlawful activity," as that term is defined in Utah Code Ann. § 76-10-1602(2), thereby

2  damaging Plaintiffs and the other Class members in violation of Utah Code Ann. § 76-

3  10-1603(4).

4      146.   At all relevant times, Defendants have conducted and/or participated in,

5  directly or indirectly, the management and operation of an enterprise through a pattern

6  of unlawful activity, thereby damaging Plaintiffs and the other Class members in

7  violation of Utah Code Ann. § 76-10-1602(3).

8      147.   At all relevant times, Defendants engaged in acts constituting "deceptive

9  business practices," as defined in Utah Code. Ann. § 76-10-1602(4)(bb).

10     148.   Plaintiffs and the other Class members, by purchasing the MonaVie

11 Products, have been injured in their person or property and, therefore, have standing to

12 sue Defendants under Utah Code Ann. § 76-10-1605(1).

13     149.   By virtue of their violations of Utah Code Ann. § 76-10-1603(3) and (4),

14 Defendants are jointly and severally liable to Plaintiffs and the other Class members

15 for two times the damages that Plaintiffs and the other Class members suffered as a

16 result of Defendants' scheme to defraud.

17     150.   THEREFORE, Plaintiffs pray for relief as set forth below.

18                          **PRAYER FOR RELIEF**

19     WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the

20 Class as follows:

21     A.     An Order certifying the proposed Class and the proposed California

22 Sub-Class and Missouri Sub-Class under Rules 23(a), 23(b)(2), and (b)(3) of the

23 Federal Rule of Civil Procedure; appointment of Plaintiffs as representatives of the

24 Class; appointment of Plaintiff Parker as representative of the California Sub-Class;

25 appointment of Plaintiff Harbut as representative of the Missouri Sub-Class; and

26 appointment of Plaintiffs' undersigned counsel as counsel for the Class;

27     B.     An Order declaring that Defendants are financially responsible for

28 notifying Class members of the pendency of this suit;

C.     An Order establishing Defendants as constructive trustees of the profits that served to unjustly enrich them, together with interest during the period in which Defendants retained such funds;

D.     For injunctive relief only pursuant to California Civil Code § 1780, as Plaintiffs through this Complaint at this point expressly do not seek any monetary type of relief pursuant to the CLRA;

E.     An Order providing injunctive relief, pursuant to California Civil Code § 1780(a)(2) and (a)(5) and pursuant to California Business and Professions Code §§ 17203 and 17535, requiring Defendants to:

       1.     remove language on the MonaVie Products' packaging representing that the Products strengthen the body's immune system and/or aid the body in fighting against aging or various diseases;

       2.     remove language on the MonaVie Products' packaging representing that the Products provide any health benefit that cannot be substantiated by reliable scientific studies;

       3.     provide restitution to Plaintiff Parker and the other members of the California Sub-Class; and

       4.     disgorge all revenues obtained as a result of Defendants' violations of Utah and California law;

F.     An Order awarding statutory damages in the maximum amount provided by law;

G.     An Order awarding monetary damages, including, but not limited to, any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury, with respect to the common law claims alleged;

H.     An Order awarding compensatory damages, the amount of which is to be determined by the Court or jury;

1       I.      An Order awarding punitive damages in accordance with proof and in an

2 amount consistent with applicable precedent;

3       J.      An Order awarding interest at the maximum allowable legal rate on the

4 forgoing sums;

5       K.     An Order awarding Plaintiffs their reasonable costs and expenses of suit,

6 including their attorneys' fees; and

7       L.      Such further relief as this Court may deem just and proper.

8                          **JURY TRIAL DEMANDED**

9      Plaintiffs hereby demand a trial by jury.

10 Dated: November 12, 2012        **REESE RICHMAN LLP**

11

12                               Michael R. Reese (State Bar No. 206773)

13                               875 Avenue of the Americas, 18th Floor

New York, New York 10001

14                               Telephone:  (212) 643-0500

15                               Facsimile:   (212) 253-4272

Email:        mreese@reeserichman.com

16

17                               - and -

18                               **THE KREISLER LAW FIRM LLC**

19                               Brian T. Kreisler

P.O. Box 1353

20                               O'Fallon, Illinois 62269

21                               Telephone:  (618) 589-2165

Facsimile:   (618) 632-5095

22                               Email:        Brian@kreislerlawfirm.com

23                               *Counsel for Plaintiffs and Proposed Class*

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Terry J. Hatter and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

### EDCV12- 1983 TJH (OPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [✓] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
MONAVIE INC. and MONAVIE LLC
   10855 S RIVER FRONT PKWY
   SOUTH JORDAN UT 84905;
JUICEY ACAI, LLC
   20652 GELMAN DR, RIVERSIDE CA  92508

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM PARKER and ANDREW HARBUT, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>MONAVIE, INC.; MONAVIE LLC; and JUICEY ACAI, LLC,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>EDCV12-1983 TJH (OPx)<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S):

   A lawsuit has been filed against you.

   Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Michael R. Reese_____, whose address is REESE RICHMAN LLP, 875 Avenue of the Americas, 18th Floor, New York, NY 10001  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  NOV 1 3 2012

By: _____
      JULIE PRADO
      Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                              SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>ADAM PARKER and ANDREW HARBUT, on behalf of themselves and all others similarly situated | DEFENDANTS<br>MONAVIE, INC.; MONAVIE LLC; and JUICEY ACAI, LLC |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Michael R. Reese (SBN 206773), REESE RICHMAN LLP, 875 Avenue of the Americas, 18th Floor, New York, NY 10011, (212) 643-0500; and Brian T. Kreisler, THE KREISLER LAW FIRM LLC, O'Fallon, Illinois. | Attorneys (If Known)<br>(Unknown) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No     ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §1332(d) (diversity jurisdiction)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☒ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: **EDCV12-1983**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**CIVIL COVER SHEET**

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura County (Plaintiff Parker) | Missouri (Plaintiff Harbut) |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County (Juicey Acai, LLC) | Utah (MonaVie, Inc. and MonaVie LLC) |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura County and Riverside County | Missouri and Utah |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  November 13, 2012

**Notice to Counsel/Parties:**   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |